# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted on the Briefs February 22, 2005

Decided March 8, 2005

No. 03-1271

ENTERGY SERVICES, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

INTERNATIONAL PAPER COMPANY, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*J. Wayne Anderson*, *Erin M. Murphy*, and *Floyd L. Norton, IV* were on the brief for petitioner.

*Cynthia A. Marlette*, General Counsel, Federal Energy Regulatory Commission, *Dennis Lane*, Solicitor, and *Judith A. Albert*, Attorney, were on the brief for respondent. *Laura J. Vallance*, Attorney, entered an appearance.

*Neil L. Levy* and *Ashley C. Parrish* were on the brief for intervenor International Paper Company.

Before: EDWARDS, SENTELLE, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Entergy Services, Inc., an affiliate of Entergy Corp., a registered public utility holding company (individually and collectively "Entergy"), petitions for review of orders by the Federal Energy Regulatory Commission ("FERC" or "Commission"). FERC held that Entergy's practice of allocating all of a qualifying facility's (QF) output to its schedule and, in the event of a shortfall in the generation of electric energy, serving the QF's host load under retail rates was unreasonable and unduly discriminatory. *See Entergy Servs., Inc.*, 103 F.E.R.C. ¶ 61,125 (2003) ("*Initial Order*"); *Entergy Servs., Inc.*, 104 F.E.R.C. ¶ 61,061 (2003) ("*Rehearing Order*"). The Commission's ruling was intended to benefit customers by treating QFs who wish to participate in the market for the wholesale sale of electric energy comparably to other sellers in that market. *Initial Order*, 103 F.E.R.C. at 61,395. FERC directed Entergy to cease following its discriminatory allocation methodology and make refunds of the charges that it had collected under the unlawful methodology. *See Initial Order*, 103 F.E.R.C. at 61,399. Entergy now challenges the refund order. For the reasons indicated below, we deny the petition for review.

\* \* \* \*

"A QF is a cogeneration facility or a small power production facility that meets the statutory and regulatory requirements to be a qualifying facility. 16 U.S.C. §§ 796(17), (18) (2000); 18 C.F.R. Part 292 (2002). Many QFs (particularly those that are cogeneration facilities) are associated with and, typically, interconnected with and supply electric energy to, an industrial customer, generally referred to as their 'host load.'" *Initial Order*, 103 F.E.R.C. at 61,395 n.2. On June 1, 2001,

Entergy filed with the Commission revisions to its Generator Imbalance Agreement ("GIA"), which ensures the balancing of flows of electrical power on Entergy's transmission system. Under Entergy's proposed GIA, once a QF submitted a schedule with Entergy for a wholesale sale, Entergy would deem the QF's output to go first to the scheduled transaction, with the remainder deemed to serve the host load. Under this method of allocating a QF's output, Entergy would charge any energy deficiencies to the QF's host load, which Entergy then supplies under its retail rates. *Id*. at 61,396. A number of intervenors objected to this "schedules first" allocation methodology, arguing that when a QF files a schedule with Entergy and experiences a generation shortfall, Entergy's GIA scheme would prevent the QF from choosing to allocate its output first to meet the needs of its host load and then obtain generator imbalance energy to meet the shortfall in its schedule. *Id*. FERC agreed with the intervenors:

> Unlike other generators who do not produce sufficient energy to meet their schedules, and thus pay for Deficient Energy, under Entergy's schedules first policy QFs do not pay for Deficient Energy but instead Entergy imposes on QF host loads a retail rate, including a demand rachet – *i.e.*, a much higher rate. Intervenors present an example in which under the schedules first policy the retail rates that Entergy would charge the host load would be over 1,800 times the Deficient Energy charge for the same deficiency. This sort of excessive and unduly discriminatory charge, really a penalty, effectively excludes QFs from the wholesale electric energy market in the Southeast, because QFs would likely not risk exposing their host loads to such high rates. . . . In sum, Entergy's treatment of QFs differs markedly, and unjustifiably, from its treatment of other generation on its system.

*Id.* at 61,398 (footnotes omitted).

To remedy this situation, FERC ordered Entergy "to implement the host loads first allocation method, and to make refunds accordingly." *Id.* at 61,399. Under the "host loads first" allocation methodology, when QFs fail to produce all the energy they are scheduled to provide, they may – at their discretion – assign their electric energy to their host loads first. If a QF chooses to assign the power first to the host load, Entergy will supply deficient energy to the QF under the GIA. The "schedules first" and "host loads first" allocations produced very different outcomes, because retail rates charged to the QF hosts were much higher than the GIA rates that would be charged to the QFs. *See id.* at 61,396-97.

Entergy raises two issues in its petition for review. First, Entergy argues that FERC acted beyond the scope of its authority under the Federal Power Act ("FPA"), 16 U.S.C. § 824(a) and (b)(1) (2000), when it ordered Entergy to refund retail rates collected pursuant to state utility commission-approved tariffs. Second, Entergy contends that, even if FERC acted within its authority, the Commission's decision to order refunds is arbitrary and capricious, because it deviates from agency precedent without reasoned justification. We find no merit in these claims.

Entergy's first argument – that the Commission has no jurisdiction to direct Entergy to make refunds, because, when using the "schedules first" allocation methodology, Entergy was collecting retail rates from QF host loads under state utility commission-approved tariffs – finds no support in the law and it defies logic. As the Commission noted,

> [t]he ordering of refunds in this proceeding has nothing to do with the regulation of retail rates. In the [*Initial Order*], the Commission did not find that retail rates were unjust or unreasonable; it found that Entergy should have been charging QFs for Deficient Energy under the GIA. That is, the Commission found that Entergy was providing a

wholesale service, *i.e.*, the provision of Deficient Energy under its GIA, and that Entergy should have been charging a wholesale rate, *i.e.*, charging QFs Deficient Energy charges.

The [*Initial Order*] found that Entergy's schedules first policy is unreasonable and unduly discriminatory. Because Entergy does not contest this finding, Entergy, in effect, concedes that, although it charged QF host loads, it had no lawful right to do so. The Commission has, and must have, the power to correct this wrong. Entergy cannot successfully argue that because it improperly charged customers retail rates for a wholesale service, it does not have to refund the monies collected. Rather, the Commission has the authority under Section 205 of the FPA, 16 U.S.C. § 824d (2000), to direct refunds of amounts improperly charged for Commission-jurisdictional services.

*Rehearing Order*, 104 F.E.R.C. at 61,213 (footnotes omitted). As FERC makes clear, Entergy surely cannot avoid refunds *because* it was charging QFs using the wrong methodology under bundled state-jurisdictional retail rates. The rates at issue related to what Entergy should have considered as wholesale service provided by Entergy to QFs, which is clearly within the Commission's regulatory jurisdiction. Entergy used the "schedules first" methodology in the GIA to give the appearance of a retail sale to a QF host when lawfully under a "host loads first" methodology this QF output should have been applied initially to its host load so that any deficiency would result in a wholesale sale to satisfy the QF's schedule. Therefore, we agree with FERC that the ordering of refunds in this case had nothing to do with the regulation of retail rates.

Entergy's second argument is equally unpersuasive. Entergy claims that FERC's decision requiring Entergy to shift from the "schedules first" to the "host loads first" methodology was a change in rate design, and that FERC failed to provide a

reasoned explanation for departing from its precedent under which changes in rate design are implemented prospectively. FERC does not dispute that, under existing agency policy, the Commission generally avoids imposing retroactive changes to rate designs. *See Consumers Energy Co.*, 89 F.E.R.C. ¶ 61,138, at 61,397 (1999). Rather, the Commission maintains that

> Entergy should not have been charging QF host loads under its schedules first policy; instead, it should have been collecting Deficient Energy charges from QFs. This is not a change in rate design, this is merely finding that Entergy billed the wrong customers at the wrong rates.

*Rehearing Order*, 104 F.E.R.C. at 61,212. In other words, there were no rate design *changes* in this case.

The issue that FERC addressed was which allocation methodology to apply to which customer. By contrast, the FERC decisions on which Entergy relies, *Wis. Pub. Serv. Comm'n*, 51 F.E.R.C. ¶ 61,347 (1990), and *Union Elec. Co.*, 64 F.E.R.C. ¶ 61,355 (1993), involved changes in rates. Entergy's position that rate design is any "methodology [that] determines how the supplier will be paid," Petitioner's Br. at 17, is as FERC states, "so broad that it would seem to cover virtually any situation in which the Commission has found that a regulated entity has charged unlawful rates, and is incorrect." Respondent's Br. at 21-22. Because FERC reasonably concluded that the orders under review did not present a change in rate design, the Commission's refund decision is not inconsistent with FERC precedent that changes in rate designs should be prospective.

Finding no merit in Entergy's claims, we hereby deny the petition for review.

*So Ordered.*